LELAND L. PEARSON v. MARY E. CALDWELL ET AL.

[47 South. 436.]

1. ESTATES OF DECEDENTS. *Administrator's sale of land. Estoppel. Ejectment by heirs. Injunction. Code* 1892, § 1907. *Code* 1906, § 2082. *Invalid sale. Purchaser's rights.*

Where an administrator made an invalid sale of the lands of the intestate for the payment of debts and a balance of the proceeds of the sale, after the payment of all debts, enlarged the shares distributed to the heirs, the reception thereof does not estop them from maintaining ejectment for the land against the purchaser, nor warrant the enjoining of such a suit, since, under Code 1892, § 1907 (Code 1906, § 2088) making the purchase money in such case a charge on the land and providing for such cases, the purchaser may, in the ejectment suit, be given all the relief to which he is entitled.

2. SAME. *Misdescription of land. Code* 1892, § 1897. *Code* 1906, § 2072.

Code 1892, § 1897 (Code 1906, § 2072), providing that if any mistake shall be made in the description of any land of a decedent.

sold by an executor or administrator, either in the petition, decree or other part of the proceedings, the same may be corrected by the court on petition of the purchaser or his assigns, has no application to a case where there is nothing in the record which in any way points to a misdescription; mere belief that other lands were intended to be sold will not do.

FROM the chancery court of Panola county

HON. ISAAC T. BLOUNT, Chancellor.

Pearson, appellant, was complainant in the court · below; Mrs. Caldwell and others, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court.

The facts sufficiently appear from the opinion of the court.

*J. C. Wilson,* for appellant.

When T. F. Caldwell lived he owned the lot in controversy and thought it was described as Lot No. Five in Block F in Batesville. He paid taxes on it by that description for several years. He did not, in fact, own the lot so described, and did not claim it. The lot in controversy had no specific number, but was generally recognized and called the lot in the rear of the Caldwell store houses. When Caldwell died his administrator, Houston, called the lot in controversy by the same name, and paid taxes on it by that description. Houston filed a petition to sell the lands and pay debts, to which the appellees were all proper parties. In his petition, he asked for the sale of Lot Five, Block F, meaning the lot in controversy, and calling it as he had theretofore called it by the wrong name. His attorneys made the same mistake. They both so testified. Houston took his tax receipts to his attorney, and they decided to ask the sale of all the lands owned by Caldwell in Batesville, except the homestead. Taking the numbers from the tax receipts, they of course described this land as it was described on the tax rolls, and in the tax receipts as Lot Five, Block F, but meaning this lot. When the sale took place, all the lands ad-

vertised were not sold.    Before the sale was made, some persons
who were about to bid on the store houses, wanted to know
whether or not they would get the lot in the rear, so the lot
in the rear of the store houses was first sold for sixty dollars to
R. H. Moore, who then purchased one of the stores immediately
in front of this lot for $1,650.    The sale having by this time,
brought enough to pay the debts, no more property was sold.
This sale was made on the first Monday in December, 1899,
and it was confirmed on the 3rd day of March, 1900.    In the
sale made to Moore of the lot in controversy, it was for the first
time described as the lot in the rear of the store houses of Cald-
well, known as the Caldwell Block in Batesville, Mississippi,
and more particularly described in a certain deed therein re-
ferred to.    By this description the sale was reported to the
court at its regular term and confirmed.    By this description,
the administrator made a deed to Moore, the purchaser, and re-
ceived therefor the sixty dollars.    Ed. E. Caldwell, one of the
appellees, knew of the report and thought the price inadequate,
but failed to object.    Houston, the administrator, testified that
he wrote to the other heirs about it and they made no objections.
Moore, the purchaser, immediately took possession, put a small
building on it, and held it until his death.    At a partition sale
of his devisees, Pearson bought it.

The administrator made a final account, charged himself
with the sixty dollars, and with the other money received, in
the report of sale of land.    The appellants, adults, were sum-
moned to contest the final account; made no objection to it, re-
ceived the balance in the hands of the administrator for the
balance of the debts, which included the sixty dollars, and still
have it.

Some seven years after the sale, and about the same length
of time after the reception of the money, the appellants, with-
out offering to return the money, brought suit in ejectment
against Pearson for the lot.    There was a mistake in the de-

scription in Houston's petition for sale and decree for sale of the lands in the Caldwell estate, so that the lot is not properly described therein. Pearson could not set up the administrator's deed in the ejectment suit as a defense, because it would be urged the deed was void as the petition did not describe the lot in controversy, nor did the decree ordering the sale. Consequently his relief was in equity.

He enjoined the ejectment suit, and his amended bill set up the facts here stated, and asked a correction of the petition for sale and the decree of sale, under Code 1906, § 2072 and Code 1892, § 1897. The defendants, still cheerfully keeping the money received from such sale, claimed that the sale was invalid, and resisted his bill. This resistance was successful.

The result so far of the litigation is that the Caldwells keep the money, and will get the land in the ejectment suit; while Pearson is denied equitable relief, and mulcted in damages on his injunction bond. The chancellor did not hold against complainant on the facts. He delivered a written opinion in which he gave expression to the idea that the remedy was wholly in the ejectment suit. He did not think that the facts stated constituted a ground for the correction of the mistake under code sections cited, nor constituted an equitable estoppel which would cause the correction of the deed in equity.

Appellant claims that he comes under the very letter and spirit of Code 1906, § 2072 and Code 1892, § 1897.

The language of the statute is too plain to bear argument or construction. Deeds are constantly reformed in equity, and this statute is only an extension of the equitable doctrine. The court which ordered the sale is of course the court in which the correction should be made, and in that court this bill was filed and dismissed. The court has often granted reformation of deeds and instruments in cases not so strong as this. We cite the following as illustrative thereof: *Hawkins v. Blair,* 36 South. Rep. 246; *Miles v. Miles,* 84 Miss. 624, 37 South. 112; *Moore v. Crump,* 84 Miss. 612, 623, 37 South, 109.

*Lowry & Lamb,* for appellees.

It will be observed by examination of the record that the land here in controversy is not, in any way, referred to in any part of the proceedings by the administrator for sale of lands, except in the report of sale; neither in the petition, decree for sale, advertisement of the sale, or in the decree of confirmation. It is a noticeable feature of this decree for confirmation that while it in general terms ratifies and confirms the sale, as shown by the report, it proceeds to direct the administrator to execute deeds to the purchasers "of the land so purchased by them respectively, to-wit" following which is a description of all of the lands, except the land here in controversy which is conspicuously left out. We think this is not a mistake in the description of land sold within the meaning of the statute. Here there was a petition for sale of a well-known and perfectly described piece of land, and the administrator, without any order to do so, and without any advertisement or notice, undertook to sell another well described and designated piece of land. Whatever the deceased may have thought about the description, or what the administrator or his attorney may have thought about it, should not effect the rights of these appellees. There is an utter absence of any evidence that any one of these appellees, whose rights are here involved, ever had any idea that Lot 5 meant the lot in the rear of the store building.

It is elementary that an administrator cannot sell the lands of the decedent without an order so to do previously taken. 11 Am. & Eng. Ency. of Law (2d ed.) 1121 and authorities cited.

If the appellees were estopped, the estoppel was good in the ejectment suit as well as in equity. But we contend that there was no estoppel. So far as the appellant's right to the return of the purchase money is concerned, that could have been availed of in the ejectment as well as in the equity court, and it was not incumbent upon the appellees to tender the money back,

either before bringing the ejectment suit or in that suit. Code 1906, § 2082.

CALHOON, J., delivered the opinion of the court.

The death of T. F. Caldwell cast the title to his lands on his heirs at law, who brought ejectment for a certain lot "in the rear of what was known as the Caldwell storehouses in the town of Batesville." Pending that action of ejectment, this suit in equity was filed by Pearson for an injunction against its prosecution. On the hearing, the bill and an amended bill were dismissed, and the injunction dissolved.

Pearson claims an equitable title through a sale to pay debts made by T. F. Caldwell's administrator. At that sale one Moore bought, or thought he bought, the land here litigated about. On the death of Moore there was a partition sale of his lands, at which sale Pearson bought the lot. Pearson sets up in his bill that there was a mistake in the petition and decree for sale to pay debts by the administrator of T. F. Caldwell. He further sets up that the appellees who are plaintiffs in the ejectment suit, were estopped to deny his title derived from that sale because they accepted the purchase money paid. We may say here that the acceptance by the heirs of T. F. Caldwell of the purchase money was simply that their *pro rata* was by that much proportionately increased in the distribution of the estate, and that, under the statute, (Code 1892, § 1907, Code 1906, § 2082) this might be set up in the ejectment suit, and a lien on the land for that and improvements, if any, could be fixed in that action.

The main feature, however, of the bill before us, is to correct what is alleged to be a mistake in the proceedings of sale, and have the land correctly described and the title fixed in Pearson. This prayer is based on Code 1892, § 1897, which is brought forward identically in Code 1906, § 2072:

"2072 (1898). *Mistake in Description of Land Corrected.* If any mistake shall be made in the description of any land of

a decedent sold or leased, either in the petition, decree or other part of the proceedings, the same may be corrected by the court on petition of the purchaser or his assigns."

From our view, the position of counsel urging this correction, while put with great cogency, is not sound. As a matter of fact the land now in controversy was not described in the petition of the administrator for sale nor in the final decree confirming the sale; and we do not see how we can amend, because, as averred in the bill, the lot sold was thought to embrace it. We find that, where land is sold which is not embraced in the petition for sale, nor in the decree of confirmation, this cannot be called a mistake in the description, such as is referred to in the section of the Code cited. And this is not cured by the mere idea of the administrator and his attorneys that it was embraced by any particular lot which was the property of the decedent and was in fact sold. We think that a correctible mistake under the statute must be pointed to in some way in the petition or decree, and cannot be supplied by the general belief.

*Affirmed.*